# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

**DEREK L. HOLT,**

    **Plaintiff,**

vs.                                                                  Case No. 1:17cv191-MW/CAS

**NANCY A. BERRYHILL,**
**Deputy Commissioner for**
**Operations, performing the**
**duties and functions not reserved**
**to the Commissioner of Social**
**Security,**[1]

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D). It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Deputy Commissioner for Operations (Commissioner) of the Social Security Administration (SSA). It was determined that Plaintiff was no

---

    1  Defendant's title has changed.  *See* https://www.ssa.gov/agency/commissioner.html (last viewed Apr. 18, 2018).

Case No. 1:17cv191-MW/CAS

longer disabled as of December 30, 2014, having been disabled since October 1, 2007, and that Plaintiff had not become disabled again since December 30, 2014. The issue before the Court is whether the cessation of disability benefits is correct. After consideration of the entire record, it is recommended that the decision of the Commissioner be affirmed.

**I. Procedural History**

In a decision dated December 8, 2010, an Administrative Law Judge (ALJ) found Plaintiff disabled as of October 1, 2007, and entitled to benefits for a period of disability and disability insurance benefits (DIB). Tr. 17, 119-25.[2] The SSA determined Plaintiff was no longer disabled as of December 30, 2014. Tr. 17, 131. On August 13, 2015, a State agency Disability Hearing Officer reached the same conclusion on reconsideration. Tr. 17, 143-51.

Plaintiff requested a hearing and ALJ Stephen C. Calvarese held a video hearing on February 2, 2016, presiding from Jacksonville, Florida. Tr. 17, 42-75. Plaintiff appeared and testified in Gainesville, Florida, and was represented by Diane Villeneuve, a non-attorney representative.

---

[2] Citations to the record transcript/administrative record, ECF No. 11, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

Case No. 1:17cv191-MW/CAS

Tr. 17, 42, 47-68, 183-86, 315. Mark Capps, MS, CRC, CVE, an independent vocational expert, testified. Tr. 68-74, 312 (Resume). On May 31, 2016, the ALJ determined that Plaintiff's disability ended as of December 30, 2014, and had not become disabled again since that date. Tr. 17-36. On May 25, 2017, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Tr. 1-3.

On July 23, 2017, Plaintiff filed a Complaint requesting judicial review of the Acting Commissioner's final decision. ECF No. 1. Both parties filed memoranda of law, ECF Nos. 14-1 and 15, which have been considered.

## II. Findings of the ALJ

The ALJ made several findings:

1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated December 8, 2010, which is known as the "comparison point decision" or CPD. Tr. 19. (Plaintiff was disabled since October 1, 2007. Tr. 124.)

2. At the time of the CPD, the claimant had the following medically determinable impairments: chronic back pain; degenerative disc disease; status-post trans catheter arterial coil embolization for right carotid cavernous fistula; no near visual acuity; and a dysthymic disorder. These impairments were found to result in the residual functional capacity [RFC] to perform sedentary work with no near visual acuity and with illiteracy. *Id*. The claimant has not engaged in substantial gainful activity since December 8, 2010. *Id*. (Plaintiff testified in his prior case that "he has a fistula behind his right eye.

He said that his vision occasionally gets blurry. He said he has problems with the left eye too, but it is better than the right eye." Tr. 122.)

3. The medical evidence establishes that, since December 30, 2014, the claimant had the following medically determinable impairments: migraine; degenerative disc disease of the lumbar spine with lumbosacral spondylosis, sacroilitis (sic), and low back pain; myalgia and chronic pain; a non-ruptured cerebral aneurysm, status-post coiling of the right carotid cavernous fistula; late effects of an intracranial injury; a major depressive disorder; and a panic disorder. These are severe impairments. *Id.* The ALJ determined that the record no longer established Plaintiff has no near visual acuity and, as a result, determined that Plaintiff no longer has a severe vision impairment. The RFC determination does not contain the visual limitations that were included in the CPD RFC determination. *Id.*; *see* Tr. 121.

5. Since December 30, 2014, the claimant does not have an impairment or combination of impairments which meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20. The ALJ considered the Listings under section 1.00 (musculoskeletal disorders), 2.00 (speech and special senses), and 4.00 (cardiovascular system). *Id.* The ALJ also considered the severity of Plaintiff's mental impairments in light of Listing 12.04. The ALJ determined that Plaintiff had *moderate* restriction in activities of daily living; *moderate* difficulties in social functioning and with regard to concentration, persistence, or pace; and *no* episodes of decompensation, which have been of extended duration. Tr. 20-21. "Because the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied." Tr. 21. The ALJ also determined that the "paragraph C" criteria were not satisfied. *Id.*

6. Medical improvement occurred as of December 30, 2014, such that "there had been a decrease in medical severity of the

impairments present at the time of the CPD.   Tr. 22.

7.   As of December 30, 2014, the impairments present at the time of the CPD have decreased in medical severity to the point where the claimant has the RFC to perform light work as defined in 20 C.F.R § 404.1567(b) with the ability to stand and/or walk for 6 hours in an 8-hour day; lift 20 pounds occasionally and 10 pounds frequently; occasionally climb stairs and ladders, stoop, crouch, and crawl; and because of various moderate mental limitations, can only perform simple, tasks on a sustained basis; must avoid fast paced production requirements" as must avoid abrupt changes in work is only able to handle gradual changes); and must avoid others, except for occasional, brief interaction:-workers and supervisors.   Tr. 22.   In making this RFC assessment, the ALJ did not consider the limiting effects of the impairment that developed after the CPD.   *Id.*

8.   The claimant's medical improvement is related to the ability to work because it results in an increase in the claimant's RFC.   *Id.*   As of December 30, 2014, the claimant continues to have a severe impairment or combination of impairments, including the severe impairments present at the time of the CPD, and, in addition, the claimant now has a severe panic disorder.   *Id.*

9.   Based on the impairments present as of December 30, 2014, the claimant has the RFC to perform light work defined in 20 C.F.R. § 404.1567(b) with the ability to stand and/or walk for 6 hours in and 8-hour day; lift 20 pounds occasionally and 10 pounds frequently; occasionally climb, stoop, crouch, and crawl; various moderate mental limitations result in the following specific restrictions: he can only perform simple, routine tasks on a sustained basis; cannot perform any fast-paced production or quota jobs; cannot handle abrupt changes, but can handle gradual changes; and needs to avoid others except for occasional brief, superficial interaction with the general public, co-workers, and supervisors.[3]   Tr. 22-23.   The

---

[3]   An RFC is the most a claimant can still do despite limitations.   20 C.F.R. § 404.1545(a)(1).   It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.   *Id.*   The responsibility

>ALJ provided an extensive discussion of the medical evidence, including medical opinions from 2013 to 2016. Tr. 23-34.
>
>10. As of December 30, 2014, the claimant is unable to perform past relevant work such as a laborer, city street department, medium exertion, with an SVP of 3, and laborer, building maintenance, heavy exertion, with an SVP of 2.[4] Tr. 34; Tr. 68-70. On December 30,

---

for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996, rescinded eff. Mar. 27, 2017) ("The term "*residual functional capacity assessment"* describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered the decision. *See generally* Bagliere v. Colvin, No. 1:16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). A Specific Vocational Preparation (SVP) of 2 means "[a]nything beyond short demonstration up to and including 1 month." Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP. "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Id*. Unskilled work corresponds to an SVP of 1 and 2. Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000). Semi-skilled work corresponds to an SVP of 3 and 4. *Id*. An SVP of 3 means "[o]ver 1 month up to and including 3 months." *Id*. "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base." SSR 85-15, 1985 SSR LEXIS 20, at *11 (1985). "Medium work involves lifting no more than 50 pounds at a time or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §

2014, the claimant was a younger individual age 18-49 and he remains a younger individual.  Tr. 34.  The claimant is illiterate and is able to communicate in English.  *Id.*  The claimant's acquired job skills do not transfer to other occupations within the RFC defined above.  *Id.*

11.  As of December 30, 2014, considering the claimant's age, education, work experience, and RFC based on the impairments present as of December 30, 2014, the claimant is able to perform a significant number of jobs in the national economy.  Tr. 34; 70-74.  These jobs include night cleaner, labeler, and warehouse checker, each with a light exertional level, and an SVP of 2.  *Id.*; *see supra* at 6, n.4.

12.  The claimant's disability ended as of December 30, 2014, and the claimant has not become disabled again since that date.  Tr. 35.

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord*

---

404.1567(c).  "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work."  20 C.F.R. § 404.1567(d).

Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[5]

In reviewing whether Plaintiff continued to be disabled, the ALJ was required to follow a sequential evaluation process outlined in the regulations at 20 C.F.R. § 404.1594(f). The steps include the following general inquiries:

> (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant's disability status will cease.
>
> (2) If no, does the claimant have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1 [of the regulations]?
>
> (3) If no, has there been medical improvement in the claimant's condition?  If yes, proceed to Step 4.  If no, the claimant's disability continues.

---

[5] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

(4) Is the medical improvement in the claimant's condition related to his ability to work? If no, proceed to Step 5.   If yes, proceed to Step 6.

(5) If the medical improvement in the claimant's condition is not related to his ability to work, do any of the exceptions listed apply?   If no, the claimant's disability continues.

(6) If the medical improvement is found to be related to the claimant's ability to work, the Commissioner will determine whether all of the claimant's current impairments, in combination, are severe.

(7) If these impairments are severe, the Commissioner will assess the claimant's residual functional capacity to determine whether the claimant can perform his past relevant work.   If the Commissioner determines that the claimant can perform his past relevant work, his disability status will cease.

(8) If the claimant can no longer perform his past relevant work, the Commissioner will assess whether the claimant can do other work considering the claimant's residual functional capacity, age, education and past work experience.   If he can, his disability status will cease.

20 C.F.R. § 404.1594(f)(1)-(8).

"An ALJ may terminate a claimant's benefits if there is substantial evidence that there has been medical improvement in the claimant's impairments related to his ability to work, and the claimant is now able to engage in substantial gainful activity."   <u>Klaes v. Comm'r, Soc. Sec. Admin.</u>, 499 F. App'x 895, 896 (11th Cir. 2012) (per curiam) (unpublished) (citations omitted); *see* 20 C.F.R. § 404.1594(a).   Medical improvement means "any

decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant] was disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). The conclusion that a decrease in medical severity exists must be based upon improvements in a claimant's symptoms, signs, or laboratory findings associated with the claimant's impairment(s). 20 C.F.R. § 404.1594(b)(1). "To determine if there has been medical improvement, the Commissioner must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with the new medical evidence." Gombash v. Comm'r, Soc. Sec. Admin., 566 F. App'x 857, 859 (11th Cir. 2014) (unpublished) (citation omitted). In fact, "a comparison of the original medical evidence and the new medical evidence is necessary to make a finding of medical improvement." Freeman v. Heckler, 739 F.2d 565, 566 (11th Cir. 1984) (per curiam) (emphasis added) (citing Vaughn v. Heckler, 727 F.2d 1040, 1043 (11th Cir. 1984)). Without such comparison, no adequate finding of medical improvement can occur. Vaughn, 727 F.2d at 1043. Indeed, the failure to make such comparison requires reversal and remand for application of the proper legal standard. *Id.*; *see* Klaes, 499 F. App'x at

896 (citing Vaughn and noting that, if the ALJ fails to evaluate the prior medical evidence and make the comparison to the new medical evidence, courts must reverse and remand for application of the proper legal standard).

## IV.   Legal Analysis

**Substantial evidence supports the ALJ's determination that Plaintiff was no longer disabled beginning December 30, 2014.**

On February 1, 2018, Plaintiff filed one page of a memorandum. ECF No. 13 at 1.   On February 14, 2018, Plaintiff filed a notice, ECF No. 14 at 1-2, stating the original filing of February 1, 2018, was incomplete and, as a result, Plaintiff filed the completed version of the memorandum consisting of 12 pages.   ECF No. 14-1.

As noted by the Commissioner, the nature of Plaintiff's challenge to the ALJ's decision is not clear.   ECF No. 14-1 at 7-12.   Plaintiff begins the argument portion of the memorandum by stating (in bold and all words capitalized) that substantial evidence does not support the ALJ's findings of fact and resolution of mixed questions of law and fact, including but not limited to Plaintiff's RFC.   ECF No. 14-1 at 7.   Plaintiff recounts the ALJ's basic findings, ECF No. 14-1 at 7-11, and then refers to the "Klaes" case. ECF No. 14-1 at 10-11.   It appears Plaintiff is referring to Klaes v. Comm'r,

Soc. Sec. Admin. cited herein, *see supra* at 9-10.   At best, Plaintiff challenges the ALJ's determination at step 3 of the sequential evaluation that Plaintiff experienced medical improvement after his 2010 CPD.   ECF No. 14-1 at 9-10.   Aside from referring to the ALJ's findings, Plaintiff offers no meaningful argument and evidence to support reversal.   ECF No. 14-1.

In the light most favorable to Plaintiff, the narrow issue before this Court is whether the ALJ considered evidence of Plaintiff's CPD, necessarily from 2010 and before 2014, as a predicate for his determination that Plaintiff was no longer disabled as of December 30, 2014.   *See* ECF No. 14-1 at 10-11.   No error has been shown.

The ALJ noted Plaintiff had several impairments at the time of the CPD and explained the prior ALJ found these impairments resulted in an RFC for a range of sedentary work, limited only by Plaintiff's illiteracy and lack of near visual acuity.   Tr. 19.   ALJ Calvarese determined that, as of December 30, 2014, the "record no longer establishes that [Plaintiff] has no near visual acuity" and noted that Plaintiff's treatment documents "fail[ed] to document any vision related impairment."   *Id.*   The ALJ also found, as of that date, that Plaintiff was able to perform a limited range of light work, as opposed to the limited range of sedentary work assessed at the CPD.

Tr. 22-34.  Substantial evidence supports these determinations.

Plaintiff does not cite to evidence that contradicts or detracts from the ALJ's determination that Plaintiff's vision improved and that his exertional limitations had lessened from sedentary to light.  Rather, Plaintiff cites to two cases that are not applicable to the facts of this case.  *See* ECF No. 14-1 at 12; ECF No. 15 at 9-10.

Notwithstanding, the ALJ compared the prior ALJ's finding that Plaintiff had no near visual acuity to more recent medical records, which the ALJ found demonstrated Plaintiff's vision improved to the point that he no longer had no near visual acuity.  Tr. 19.  The ALJ considered treatment records from Tri-County Primary Care, which showed Plaintiff generally denied blurred vision or seeing spots at visits in January 2012 through July 2014.  Tr. 19, 508, 511, 515, 554, 557, 566; *but see* Tr. 519 (blurred vision; denied pain and seeing spots), 523 (similar).  Plaintiff also saw William Titsworth, M.D., on June 2, 2013, and reported eye pain, but "no decreased vision."  Tr. 419.  On examination, Dr. Titsworth noted no eye problems, stating: "Eye: no papilledema.  No scleral edema or injection.  No ocular bruits."  Tr. 421.  Dr. Titsworth also described

accompanying CTA (Computed Tomography Angiography) findings as "negative." Tr. 423.

On October 21, 2014, Plaintiff, a new patient, reported problems with vision to Robert G. Valentine, M.D. Tr. 443. On examination, Dr. Valentine noted no eye or vision problems. Tr. 444. Although Plaintiff reported a history of vision problems and eye pain at his February 25, 2015, visit to Florida Pain and Rehabilitation Center, Tr. 583, Hoang Vu, D.O., examined Plaintiff and identified no vision problems. Tr. 583-84; *see* Tr. 26-29, 33. Plaintiff saw Richard Moliniski, PA-C, on November 3, 2015, and he reported "no recent ophthalmological exam, no dizziness or loss of vision" and the physical exam revealed no current eye problems. Tr. 606; *see* Tr. 19, 28-29.

The ALJ also relied, in part, on the opinions of P. S. Krishnamurthy, M.D., and Robert Kline, M.D., State agency doctors who reviewed the record as of December 17, 2014, and April 7, 2015, respectively, and opined that the record established no visual limitations. Tr. 453 (Exhibit B10F), 476 (Exhibit B12F); *see* Tr. 33. Although not given the same controlling weight or deference as the opinion of treating physicians, the findings of a state agency medical consultant regarding the nature and

severity of a claimant's impairments must be treated as expert opinion at the ALJ and Appeals Council levels of administrative review. *See* SSR 96-6p, 1996 SSR LEXIS 3, at *4 (July 2, 1996) (rescinded and replaced by SSR 17-2p eff. Mar. 27, 2017). The findings of a State agency medical consultant may provide additional evidence to support the ALJ's findings. *See* Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).

Substantial evidence supports the ALJ's determination that Plaintiff had medical improvement related to vision problems experienced at the CPD. The ALJ then found this and other medical improvement related to Plaintiff's ability to work that resulted in an increase in Plaintiff's RFC. Tr. 22. As noted above, Plaintiff's lack of near visual acuity was critical to the CPD determination of disability. In his 2010 decision, the prior ALJ found Plaintiff had the RFC for sedentary work, limited only by his illiteracy and his lack of near visual acuity. Tr. 121.

Further, the vocational expert testified at Plaintiff's December 1, 2010, hearing, that while illiteracy would limit the types of jobs that the sedentary worker could do, some jobs remain for a person limited to sedentary work who was also illiterate. Tr. 107-09. When the prior ALJ asked the vocational expert to consider the additional limitation of no near

visual acuity, the vocational expert testified that the additional limitation eliminated all jobs in the national economy. Tr. 112. The lack of near visual acuity, therefore, was critical to the determination at the CPD and medical improvement related to Plaintiff's near visual acuity was directly related to Plaintiff's ability to work.

Having found that Plaintiff had experienced medical improvement related to his ability to work, ALJ Calvarese proceeded to the remaining steps of the sequential evaluation process and determined that as of December 30, 2014, Plaintiff had the severe impairments listed above and that he had the RFC to perform light work with limitations. Tr. 22-34; *see* 20 C.F.R. § 404.1594(f)(6)-(7). Based in part on the vocational expert's testimony, ALJ Calvarese determined Plaintiff could not perform any of his past relevant work, but could perform jobs that existed in substantial numbers in the national economy. Tr. 34-35, 69-74; *see supra* at 5-6.

The ALJ determined that Plaintiff experienced medical improvement between the CPD and December 30, 2014, the date Plaintiff's disability ceased. Substantial evidence, including medical records and medical opinions, support the ALJ's medical improvement determination. The Commissioner's decision should be affirmed.

## V. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law. Accordingly, pursuant to 42 U.S.C § 405(g), it is respectfully recommended that the decision of the Commissioner to deny Plaintiff Social Security benefits beginning on December 30, 2014, be **AFFIRMED** and the Clerk directed to enter judgment for the Commissioner.

**IN CHAMBERS** at Tallahassee, Florida, on May 16, 2018.

>    s/   Charles A. Stampelos
> **CHARLES A. STAMPELOS**
> **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**